# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| DAVID WISE, an individual<br><br>Plaintiff,<br><br>vs.<br><br>RENY NGUYEN,<br>LY PHILLIPS,<br>WORLD PETRO EXCHANGE, LLC,<br><br>Defendants. | **Civil Case No.:** CIV-24-406-PRW<br><br>**COMPLAINT FOR:**<br><br>1. PROMISSORY ESTOPPEL<br>2. QUANTUM MERUIT<br>3. BREACH OF CONTRACT<br>4. ACTUAL FRAUD<br>5. CIVIL RICO<br><br>**Jury Trial Requested** |

## COMPLAINT

1. Plaintiff, David Wise, brings this complaint against Reny Nguyen, Ly Phillips, and World Petro Exchange, LLC, as Defendants for refusing to pay Plaintiff's invoice, allowing Plaintiff to perform work on their behalf without the intent to compensate, and at all times, led Plaintiff to believe he would be compensated for the work being performed.

## JURISDICTION

2. Jurisdiction is proper under 28 US Code § 1332 and 1441 as the matter in controversy exceeds $75,000 and is between United States citizens of different states.

3. Venue is proper under 28 US Code § 1391(b), because (1) most Defendants reside in the Western District of Oklahoma; (2) the claims alleged arose in the Western

District of Oklahoma; and (3) performance of the contract and work performed are in the Western District of Oklahoma.

## PARTIES

4. Plaintiff, David Wise, is an individual and resident of the city of Las Vegas, state of Nevada, specifically 8545 W. Warm Springs Road, #A4-381, Las Vegas, NV 89113.

5. Defendant, Reny Nguyen ("Nguyen"), is an individual with ties to the cities of Oklahoma City, state of Oklahoma, and state of Georgia. Specifically, 7975 S. Pine Street, Guthrie, OK 73044.

6. Defendant, Ly Phillips ("Phillips"), is an individual with ties to the cities of Oklahoma City and Guthrie, OK. Specifically, 7975 S. Pine Street, Guthrie, OK 73044.

7. Defendant, World Petro Exchange, LLC, is a limited liability company, formed in the state of Georgia. Specifically, service of process is upon defendant Reny Nguyen at 5456 Jimmy Carter Blvd, Ste 120, Norcross, GA 30093.

8. At all relevant times, Defendants Nguyen and Phillips were acting both in their personal interests and as managers or managing members of Defendant, World Petro Exchange, LLC ("WPE, LLC").

## FACTS GIVING RISE TO PLAINTIFF'S CLAIMS

9. On or about April 15, 2023, Nguyen, through a mutual acquaintance, approached Plaintiff about finding an aircraft that had been missing for seven (7) years.

10. Nguyen informed Plaintiff that the aircraft owners took a loan from he and Phillips, by and through WPE, LLC.

11. The aircraft, a 1980 Dassault Falcon 50 ("Aircraft"), owned by Mid South Investments ("Debtor"), was used as collateral for a $150,000 loan provided by Defendants in January of 2013.

12. On or about May 1, 2013, Debtor defaulted on their loan with Defendants.

13. Plaintiff inquired as to why Defendants waited a decade to recover the Aircraft, but a definitive answer was hard to get. Only a claim that a lawsuit had been filed and judgment rendered in favor of Defendants against the Debtor.

14. The anticipated value of the Aircraft was approximately $1,500,000 based upon similar Aircraft then for sale.

15. With only the FAA assigned N number, Plaintiff was able to find the Aircraft in about a week, despite Defendant's years of failed efforts to locate the Aircraft.

16. Plaintiff informed Nguyen of the Aircraft whereabouts and provided pictures for proof.

17. Thereafter, Nguyen sent a number of documents via the acquaintance, on or about April 27, 2023. The documents detailed the Defendants' loan and security agreement with Debtor, which used the Aircraft as collateral. The FAA recorded the security agreement on or about May 1, 2013.

18. Nguyen and Phillips then requested Plaintiff to perform the following:

    a) find the aircraft,

    b) secure its location,

    c) repossess the aircraft,

    d) serve repossession papers and notices upon the Debtor,

    e) file necessary documents with the FAA to record the repossession,

  f)  perform an online auction of the aircraft,

  g)  file additional documents to transfer title and ownership to Plaintiff's company,

  h)  and then commence the final sale of the Aircraft.

19. While a fee wasn't completely discussed for the abovementioned services, Plaintiff informed Nguyen that standard fees average 5% to 7% of the retail value of an Aircraft.

20. To perform the above requested actions, Plaintiff, Nguyen, and Phillips executed a durable power of attorney on May 8, 2023, which enabled Plaintiff to act on Defendant's behalf to perform all services necessary as requested.

21. Plaintiff then gave a $10,000 invoice for locating the aircraft and to reposition it if necessary.

22. Defendants, and each of them, agreed to pay the invoice. Only $5,000 was paid in July of 2023.

23. Despite the failure to pay the full sum of the initial invoice, Plaintiff agreed to continue the remainder of the services requested on the continued reassurance that he would receive full compensation and title to the Aircraft once the repossession was completed. Defendants wanted to transfer title to Plaintiff's company given Plaintiff's ability to operate, sell, manage, or maintain the Aircraft.

24. Plaintiff researched UCC and local laws to ensure the process and procedures to repossess the Aircraft were followed.

25. Throughout the year, Plaintiff monitored the Aircraft, pulled title reports, and kept tabs with the local airport where the Aircraft was hangered.

26. Defendants delayed the repossession because they were attempting to locate the judgment they claimed to have had. Plaintiff, after researching court records, came to the realization that the judgment didn't exist as no lawsuit had been filed. Defendants lied to Plaintiff.

27. Plaintiff informed Defendants that the judgment wasn't necessary to invoke their repossession rights under Article 9 of the UCC, especially since the security agreement was filed and on record with the FAA.

28. Defendants gave Plaintiff the go ahead to recover the Aircraft based upon their discussions. Plaintiff requested the remainder of the invoice be paid, but Defendants continued to reassure Plaintiff that when the Aircraft was repossessed, title would transfer and he would get compensated.

29. On January 18, 2024, Plaintiff booked his flight to scout the airport where the Aircraft was located.

30. Plaintiff prepared all documentation to serve upon the Debtor in the event it could be accomplished while visiting. Plaintiff shared this document with Defendants which outlined the anticipated costs and fees, including Plaintiff's repossession fee of $120,550.

31. Plaintiff informed the airport of his arrival on the following morning, the 19th, and was greeted by the airport manager.

32. Plaintiff was able to identify the Aircraft parked in a hangar leased by Debtor. The doors to the hangar were locked, so no action could be taken.

33. However, not an hour after his arrival, one of the members of the Debtor and also the agent for service of process, happened to arrive at the hangar.

34. Plaintiff grabbed his documents, walked into the hangar, informed Debtor that the Aircraft was being repossessed, and served Debtor accordingly.

35. Plaintiff returned from the trip, filled out the necessary documents to file with the FAA, and then informed Defendants that the Aircraft had been repossessed.

36. Defendants were all too happy to hear Plaintiff accomplished exactly what was expected. Defendants did not object to the numbers on the repossession letter provided the Debtor. They also asked Plaintiff what to expect next.

37. Plaintiff informed them that the FAA documents would be notarized and filed, but that the Aircraft first had to be publicly auctioned, with notice sent to Debtor and any other lien holders that were junior to Defendant's security interest. Once the auction was completed, the Aircraft sale and transfer documents from Defendants to Plaintiff's company could be completed and the Aircraft would be sold.

38. However, Plaintiff discovered on his trip to the airport and initial inspection of the Aircraft that maintenance had not been performed for almost four years and the Aircraft hadn't flown for almost four years.

39. Aircraft require regular maintenance schedules to be completed every six months or they become out of compliance. After more than two years, the parts become obsolete, no longer warrantable, and the value of the Aircraft significantly decreases.

40. Plaintiff spoke to those he knew in the industry about the Aircraft and its condition and was repeatedly told that it wasn't worth attempting to repair and bring to airworthy status without significant money being invested. Money that Defendants didn't have or wish to invest.

41. Despite this, Plaintiff paid to advertise the Aircraft for auction and posted the Aircraft on his website under the auction tab. Only two people inquired about the Aircraft, but no one placed a bid. Of the two inquiries, one of them was a "junk yard" for aircraft and was willing to pay six figures for just the fuselage. This would allow Plaintiff to have the engines inspected and potentially repair them so they would be of value again. It would have also provided Defendants with at least $75,000 almost immediately.

42. Plaintiff informed Defendants of the best course of action, in his opinion, and further stated that Defendants shouldn't expect to receive more than $200,000 out of the Aircraft parts.

43. Defendants expressed that they were okay with that amount of money, but wanted some sort of assurance that they would receive $200,000.

44. Plaintiff explained that nothing is guaranteed because Defendants waited so long to recover the Aircraft, that the Aircraft was no longer airworthy, and the parts of the Aircraft were out of warranty, compliance, and/or simply missing. Also, Debtor had further encumbered the Aircraft with another loan from a bank that might complicate matters.

45. On March 15, 2024, Plaintiff received a response from the FAA regarding the documentation required to complete the transfer of the Aircraft from Defendants to Plaintiff's company.

46. Another conversation was had with Defendants about what was needed. Again, Defendants wanted some assurance they'd get $200,000 from the sale of the Aircraft.

47. Plaintiff acquiesced and provided an agreement to quell their concerns, and further prepared all requested documentation by the FAA. Defendants balked at the agreement because it didn't guarantee the $200,000 would be received.

48. Plaintiff informed Defendants that he would then bill them for his time, costs, and full value of his services as it was obvious they had no intention of compensating Plaintiff for this time, expertise, and money expended to Defendants' benefit.

49. Due to lack of any response or communication, Plaintiff sent a demand letter for payment of his services.

50. Defendants had until Friday, March 22, 2024 to communicate their intentions to Plaintiff and/or pay the fee of $125,500.

51. Defendants failed to pay the fees and did not communicate any intent to pay or follow through with the transfer of title/ownership of the Aircraft to Plaintiff's company.

52. As a result of Defendants malicious acts and wanton disregard for Plaintiff's right to compensation for his full and faithful performance, Plaintiff has suffered loss of money, time, and property promised.

## CLAIMS FOR RELIEF

## FIRST CLAIM FOR RELIEF – PROMISSORY ESTOPPEL

53. Plaintiff hereby incorporates all preceding and following paragraphs of the Complaint as if fully set forth herein.

54. Defendants, at all times throughout April of 2023 to March of 2024, assured, promised, and led Plaintiff to believe he would be compensated for this performance.

55. Initially, the cost for services of locating and repositioning the Aircraft was $10,000. The invoice was presented, and half was paid by Defendants, albeit months later.

56. Thereafter, repossession services were requested, that required extensive effort, risk, insurance coverage, documentation, assistance of others, potential hire of attorneys and

agents, assessment and evaluation of the Aircraft, negotiations with Debtors and other lien holders, and meetings with the airport where the Aircraft is located, among other things.

57. Defendants agreed as part of the aforementioned, that they would transfer title of the Aircraft to Plaintiff's company to operate, maintain, and generate income for all Parties.

58. Defendants made the promises of payment and title transfer without the intent of honoring their promise.

59. Defendants knew that their promise to transfer title was false and strung Plaintiff along for almost a year up to and until all services were performed wherein title was free to transfer.

60. Plaintiff believed Defendants would follow through on their promise and performed his services in reliance of their promise.

61. Plaintiff kept Defendants informed all along the way as to the progress of the repossession, the title search showing other lien activities, and issues with the Aircraft after Plaintiff's initial inspection.

62. Defendants never changed their promise throughout the process. They were clear and unambiguous in their promise: Recover the Aircraft through repossession and title would be transferred to Plaintiff to operate, manage, and/or sell.

63. The doctrine of promissory estoppel is well established in law. In *Cohen v. Cowles Media Co.*, 501 US 663 (1991), the Supreme Court recognized promissory estoppel as creating legal obligations never explicitly assumed by the parties that are enforceable.

64. Promissory estoppel requires 1) a clear and unambiguous promise, 2) foreseeability by the promisor that the promisee would rely upon it, 3) reasonable reliance upon the promise to the promisee's detriment and 4) hardship or unfairness that can be

avoided only by the promise's enforcement (*Russell v. Board of County Commissioners, Carter County*, 952 P.2d 492, 503 (2004).

65. "A promise which the promisor should reasonably expect to induce action or forbearance of a definite and substantial character on the part of the promisee and which does induce such action or forbearance is binding if injustice can be avoided only by enforcement of the promise." (*Hoffman v. Red Owl Stores, Inc.*, 26 Wis. 2d 683 (1965).

66. Estoppel, constructive fraud, and negligent misrepresentation all require that a party rely to that party's detriment on the actions or words of the other party. See Okla. Stat. tit. 15, sec. 59(1991); *Indiana National Bank v. State of Oklahoma Department of Human Services*, 857 P.2d 53, 64 (Okla.1993).

67. Here, Defendants promised Plaintiff that for compensation, he would receive title to the Aircraft, from which all Parties would make money.

68. Defendants made their promise knowing Plaintiff would rely upon their promise, did act upon their promise, and fully completed his performance of the Aircraft repossession based upon their promise.

69. Plaintiff relied upon Defendants' promise to his detriment, ie., not only have Defendants failed to pay Plaintiff, but also refused to transfer title to the Aircraft.

70. There is no other way for Plaintiff to be compensated and injustice can only be avoided by requiring Defendants to either compensate Plaintiff monetarily or follow through with the transfer of title to the Aircraft.

71. The court can choose to assign either reliance damages, ie, compensation calculated by asking what it would take to restore Plaintiff to the economic position prior to acting in reasonable reliance on Defendants' promise. Or, the court can choose expectation

damages, which would put Plaintiff in the position as if Defendants had fully performed their promise.

### SECOND CLAIM FOR RELIEF – QUANTUM MERUIT

72. Plaintiff hereby incorporates all preceding and following paragraphs of the Complaint as if fully set forth herein.

73. Defendants requested and Plaintiff accepted the performance of repossessing the Aircraft in question.

74. Defendants made it clear that Plaintiff would receive his compensation for his work when the repossession was complete.

75. Defendants have refused to compensate Plaintiff for his services, costs, and expertise.

76. On the theory of Quantum Meruit, where no express contract exists, a Defendant may not be unjustly enriched or benefitted by another's work and the person who performed the work, should be compensated accordingly (*Brown v. Wrightsman*, 51 P.2d 761, 763 (Okla. 1935).

77. At all times that Plaintiff performed work on behalf of Defendants, Defendants knew that Plaintiff expected to be paid for such repossession services.

78. Defendants have retained a benefit from the services performed by Plaintiff.

79. Defendants have not paid for the benefit they received from the services provided by Plaintiff.

80. Plaintiffs request relief on the basis of quantum meruit for work performed on behalf of Defendants and for such work as the Defendants are presently enjoying the benefit.

## THIRD CLAIM FOR RELIEF – BREACH OF CONTRACT

81. Plaintiff hereby incorporates all preceding and subsequent paragraphs of the Complaint as if fully set forth herein.

82. Plaintiff and Defendants have entered into a binding contract, which calls for payment of $10,000 for services rendered in locating the Aircraft.

83. Defendants have breached their contractual obligation to pay for the location services performed by Plaintiff.

84. Plaintiffs' attempts to collect the debt have failed as Defendants refuse to pay the amount owed.

85. Defendants have only paid half of the invoice and still owe the second half of $5,000.

86. Therefore, Defendants are in breach of contract and liable to Plaintiff for such breach.

87. As a result of said breach and non-payment for the Aircraft location services, Plaintiff is owed $5,000, plus interest.

## FOURTH CLAIM FOR RELIEF – ACTIONABLE FRAUD

88. Plaintiff hereby incorporates all preceding and subsequent paragraphs of the Complaint as if fully set forth herein.

89. The elements of actionable fraud are: 1) a false material misrepresentation, 2) made as a positive assertion which is either known to be false or is made recklessly without knowledge of the truth, 3) with the intention that it be acted upon, and 4) which is relied on by the other party to his (or her) own detriment. Fraud is never presumed and each of its elements must be proved by clear and convincing evidence. *Silver v. Slusher*, 1988 OK 53, 770 P.2d

878; *Bras v. First Bank & Trust Co.*, 1985 OK 60, 735 P.2d 329; *Dawson v. Tindell*, 1987 OK 10, 733 P.2d 407; *Bowman v. Presley*, 212 P.3d 1210, 1218 (Okla. 2009). All the essential elements requisite to constitute actionable fraud need be present, and the absence of any one is fatal to recovery. *Steiger v. Commerce Acceptance of Oklahoma City, Inc.*, Okla., 455 P.2d 81 (1969).

90. Here, Defendants made the promise of transferring title of the Aircraft once the repossession was completed and that Plaintiff would receive the benefit of his efforts either through the operation and management of the Aircraft or sale of the Aircraft.

91. Defendants intentionally made this promise knowing it to be false to lure Plaintiff into completing the repossession and then not paying him.

92. Plaintiff was unaware of the falsity of their promise and followed through with his work as promised.

93. Plaintiff later learned that Defendants have a bad habit of making promises to get their way, and then not paying for the benefit received.

94. Once the work was completed by Plaintiff and the Aircraft was ready for transferring title to him, Defendants backed out and broke their promise.

95. Plaintiff relied on Defendants' promise to his detriment and has not been paid for his services nor was the Aircraft title transferred.

96. Defendants' intentional misleading of Plaintiff warrants punitive damages in the amount of $500,000.

**FIFTH CLAIM FOR RELIEF – CIVIL RICO**

97. Plaintiff hereby incorporates all preceding and subsequent paragraphs of the Complaint as if fully set forth herein.

98. The Defendants engage in a pattern of racketeering activity by luring their victims with false promises to extract money without intent to repay.

99. Proof of a cause of action under the Racketeer Influenced and Corrupt Organizations (RICO) Act must show the Defendants have, through a pattern of racketeering activity or collection of an unlawful debt, directly or indirectly invested, maintained an interest, participated in operations, or conspired to do the aforementioned in an enterprise that affects interstate or foreign commerce.

100. All that must be shown is: (1) that the defendant agreed to commit the substantive racketeering offense through agreeing to participate in two racketeering acts; (2) that he knew the general status of the conspiracy; and (3) that he knew the conspiracy extended beyond his individual role (*United States v. Rastelli*, 870 F. 2d 822, 828 (2d Cir.), *cert. denied*, 493 U.S. 982, 110 S. Ct. 515, 107 L. Ed. 2d 516 (1989)).

101. Racketeering is a set of illegal activities aimed at commercial profit that may be disguised as legitimate business deals, such as through fraud, extortion, violence or other illegal means (18 US Code § 1961), in particular, wire fraud under Section 1343.

102. A pattern of activities requires at least two acts of racketeering activity committed within ten (10) years of each other (18 USCA § 1961(5) West 1984).

103. Here, the Defendants have not only committed fraud against Plaintiff, but also took a $150,000 deposit in a separate transaction, via interstate wire, from an associate introduced by Plaintiff to Defendant Nguyen.

104. Defendants Nguyen and Phillips conspire together in business. In fact, Defendant Phillips is often heard in the background speaking Vietnamese and directing Nguyen how to respond to any of Plaintiffs or other associates that have or still deal with them.

105. Other persons have also "lost" money to Defendants in wire fraud schemes designed to line Defendants pockets, under activity that has lasted since 2020.

106. Defendant Phillips also "fronts" for illegal activity used to purchase real property in the states of Oklahoma and Georgia.

107. Defendant's activities under RICO warrants damages treble that is being claimed for an amount of $375,000.

## PRAYER FOR RELIEF

For these reasons, Plaintiff respectfully requests that Plaintiff have judgment against Defendants, individually and jointly, for:

a. Damages for breach of contract for non-payment of location fees in excess of $5,000;
b. Damages for failure to transfer Title of the Aircraft;
c. Damages for anticipated fees for repossession of the Aircraft in the amount of $120,550;
d. Punitive damages in the amount of $500,000;
e. Treble damages under RICO in the amount of $375,000.
f. Pre-judgment and post-judgment interest;
g. Costs of suit; and
h. Any and all other relief, fees or otherwise, as this Court deems just and appropriate.

*Under Federal Rule of Civil Procedure 11, by signing below, I certify to the best of my knowledge, information, and belief that this complaint: (1) is not being presented for an improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation; (2) is supported by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law; (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and (4) the complaint otherwise complies with the requirements of Rule 11.*

DATED: March 25, 2024                                  Respectfully Submitted,

                                                       _____
                                                       David Wise, Plaintiff
                                                       *in pro se*
                                                       8545 W. Warm Springs Rd, Ste A4-381
                                                       Las Vegas, NV 89113

April 18, 2024

US District Court
Western District of Oklahoma
200 NW 4th Street, Room 1210
Oklahoma City, OK 73102

Att: Nassil

Dear Nassil,

Thank you for your assistance over the phone. As discussed, I have enclosed the complaint, the civil cover sheet, and the summons forms for all three defendants. When you receive these, please call me at 725-377-8280 and I will provide payment over the phone so the filing can be complete.

My return mailing address is:

David Wise
8545 W. Warm Springs Rd
Suite A4-381
Las Vegas, NV 89113

Thank you,

David Wise, JD, DM, MBA